This is a disbarment proceeding brought against Hiddleston Kenner, an attorney at law and a member of the bar of this state. It is alleged in the petition filed by the disbarment committee appointed by this court that Mr. Kenner has been guilty of professional misconduct; that he has demeaned himself in a manner inconsistent and at variance with the oath subscribed by him as an attorney at *Page 778 
law; and that he has disregarded the ethical duties and obligations as a lawyer which he assumed as a member of the bar and that he should be disbarred and his license to practice law before the courts of this state canceled.
The specific acts of professional misconduct alleged to have been committed by Mr. Kenner are as follows:
"1. On or about March 13, 1928, the defendant, acting in his professional capacity, prepared an instrument in writing purporting to be the last will and testament in nuncupative form under private act of one Drauzin Ducre, which said instrument, after the preparation thereof, was never signed by Drauzin Ducre, although it purported to contain his true and genuine signature, and on said day and date the defendant signed said instrument as a witness thereof and as a witness of the signature of Drauzin Ducre on said instrument, when the defendant knew that said instrument had not been signed by Drauzin Ducre, and that the signature appearing thereon was not the true and genuine signature of Drauzin Ducre.
"2. Thereafter, to-wit, on January 29, 1929, Drauzin Ducre died in the Parish of St. Tammany, and on or about April 18, 1929, in the matter entitled `Succession of Drauzin Ducre,' No. 672 of the docket of the 22nd Judicial District Court for the Parish of St. Tammany, the defendant, in the capacity of attorney for the executor named therein, presented said instrument hereinabove referred to for probate, when he knew that said instrument had not been signed by Drauzin Ducre and that the signature appearing thereon was not the true and genuine signature of Drauzin Ducre. *Page 779 
"3. On or about said day and date, to-wit, April 18, 1929, in the proceedings aforesaid, and to effect the probate of said instrument as the last will and testament of Drauzin Ducre, the defendant, after being duly sworn as a witness, testified that the said instrument had been executed by Drauzin Ducre, and that he recognized the signature thereon as the true and genuine signature of Drauzin Ducre, as well as his own as a subscribing witness, when the defendant knew that said instrument had not been signed and executed by Drauzin Ducre, and that the signature appearing on said instrument was not the true and genuine signature of said Drauzin Ducre.
"4. On or about said day and date, to-wit, April 18, 1929, in order to effect the probate of said instrument as the last will and testament of Drauzin Ducre, the defendant procured his wife, Mrs. Frances Kenner, and Adelaide Lafrer to testify, under oath, when said instrument was presented for probate, that the signature appearing thereon was the true and genuine signature of Drauzin Ducre, when the said defendant knew that the said Drauzin Ducre had not signed and executed said instrument, and that the signature appearing thereon was not his true and genuine signature, and that the testimony of Mrs. Fances Kenner and Adelaide Lafrer would be and was false and untrue.
"5. Thereafter, in the proceedings entitled `Succession of Drauzin Ducre,' No. 672 of the docket of the 22nd Judicial District Court for the Parish of St. Tammany, the defendant, with the knowledge that said instrument had not been signed by Drauzin Ducre, and that the signature appearing thereon was not the true and genuine signature of Drauzin *Page 780 
Ducre, and that the probate thereof had been procured by his own false and untrue testimony and the false and untrue testimony of his wife, Mrs. Frances Kenner, and Adelaide Lafrer, in his professional capacity, qualified Nick Ducre as the executor of the estate of said Drauzin Ducre, and took further and other steps to administer the estate of said Drauzin Ducre through Nick Ducre as executor.
"6. Subsequently, to-wit, on or about January 13, 1930, Purnell M. Milner intervened in the proceedings entitled `Succession of Drauzin Ducre', No. 672 of the docket of the 22nd Judicial District Court for the Parish of St. Tammany, to have the probate of said instrument as the last will and testament of Drauzin Ducre annulled, avoided and set aside, on the ground that the signature of `Drauzin Ducre' appearing thereon was a forgery, and the appointment of Nick Ducre as executor set aside and annulled. At the hearing of the issue thus raised by the intervention of Purnell M. Milner, to-wit, on May 13, 1930, the defendant again testified, under oath, that said instrument had been signed and executed by Drauzin Ducre and that the signature appearing thereon was the true and genuine signature of Drauzin Ducre."
When this petition was presented, this court ordered that the defendant Hiddleston Kenner be cited to appear and answer within 15 days as the rules of this court provide. On motion of defendant the time for answering was extended. Subsequently, defendant excepted to the jurisdiction of this court ratione materiæ and further that the action was premature. These exceptions were disposed of by us in a written opinion handed down on *Page 781 
Monday, November 30, 1931. In that opinion we held that the alleged acts of misconduct, if proved, would subject the defendant to disbarment.
Issue was finally joined by answer of defendant in which he denied the charges made, admitting, however, that he prepared the last will and testament of Drauzin Ducre and that he had the same probated, as alleged. He admitted that he had testified as alleged, but avowed that his testimony was true and that in truth and in fact the testator, Drauzin Ducre, signed the said instrument.
Whereupon Mr. Stamps Farrar, attorney at law and a member of the New Orleans Bar, was appointed commissioner to take evidence as provided in section 4, rule 18 of this court. After taking evidence, the commissioner made report of his findings and conclusions of law as provided in section 6 of rule 18. He sets forth his finding of fact and conclusions of law as follows:
"Having come to the conclusion that the signature to the will of Drauzin Ducre is a forgery, and the proof being conclusive that the defendant wrote the will; was present at the time it was supposed to have been executed; thereafter swore to the genuineness of the signature of the said will at the probate proceedings; had his wife and another witness to testify under oath in the probate proceedings that the signature was genuine; qualified the executor named in said alleged will; and again in proceedings brought to set aside said will as a forgery testified as to the genuineness of said signature, I am unhappily forced to find as a fact that the defendant is guilty of all the charges specified in the petition for disbarment, and is, therefore, *Page 782 
guilty of the gross professional misconduct in said petition set out.
"This conclusion is not based solely upon a preponderance of the evidence, but is based upon facts which are indisputable beyond any question of a reasonable doubt.
"Under the order of the Court appointing me Commissioner, I am directed not only to report my findings of fact, but my conclusions of law.
"I have found no reported cases decided by this Court where an attorney has been charged with procuring the probate of a will that he knew to be forged.
"Defendant undoubtedly has perpetrated upon a district court of this State a gross fraud, and one in which there are no extenuating circumstances. He repeatedly testified to the genuineness of the signature to the will, and the conclusion of the defendant to commit this perjury came not upon the spur of the moment, but when there had been many hours, days and weeks for him to reflect over the nature and enormity of his offense.
"I, therefore, find as a matter of law that this Honorable Court should enter a judgment adjudging and decreeing the defendant herein, Hiddleston Kenner, was guilty of the acts of professional misconduct charged, and that his name be stricken from the roll of attorneys, and that he should be disbarred from the practice of law before the courts of this state, as prayed for in the petition for disbarment."
This report of the commissioner was transmitted to this court by Mr. Farrar, together with a complete stenographic transcript of all *Page 783 
testimony taken before him, as well as all documents filed.
After the transcript was filed in this court, defendant filed exception thereto, and especially to the appointment of a commissioner and the proceedings had before him, alleging that said appointment and said proceedings were without warrant in law, "illegal, unconstitutional, null, void, in that Rule XVIII of this Court, and especially Secs. 4, 5 and 6 thereof are unconstitutional and void in that it deprives respondent of his constitutional rights and property without due process of law as guaranteed him by the Constitution of the State of Louisiana, and the 14th Amendment of the Constitution of the United States, and is an illegal and unconstitutional delegation of judicial powers and functions to a non-judicial officer which can be exercised only by the Supreme Court of Louisiana itself under authority of article 7, § 10 of the Constitution of the State of Louisiana of 1921."
He further excepted to the proceedings had before the commissioner on the ground that they deprived him of a fair, impartial, open, and original trial before this court as guaranteed him by article 7, § 10, of the Constitution of 1921, and on the further ground that the offense of misconduct charged against him was barred by the statute of limitations, and finally that the report of the commissioner is contrary to the law and the evidence.
1. From the oral argument of counsel for defendant and according to the briefs filed by him, we understand that the plea of unconstitutionality is based mainly upon the proposition that those sections of rule 18 of this court which provide for a commissioner *Page 784 
to take evidence in disbarment proceedings and to report his findings of fact and his conclusions of law to this court are null and void as being an unconstitutional delegation of the judicial powers and authority of this court.
Article 7, § 10, of the Constitution provides, among other things, that the Supreme Court "shall have exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar, with the power to suspend or disbar under such rules as may be adopted by the court."
Rule 18 of this court has to do with disbarment proceedings generally and was adopted pursuant to the above-quoted section and article of the Constitution. The rule is subdivided into eleven sections. Sections 1 and 2 set forth the method of bringing charges. Section 2 provides that if in the opinion of a majority of the disbarment committee there exists probable cause for disbarment or suspension, "it shall be the duty of the committee to institute in this court a suit for disbarment or suspension of the accused member of the bar." (Italics ours.)
This is in accord with the provision of the Constitution which designates this court as the forum in which such proceedings shall be had. Section 3 of the rule provides that the accused member of the bar shall be served with a copy of the complaint brought against him and shall be allowed fifteen days in which to answer, the service to be made "in the manner now or hereafter provided by law for service of citation in civil suits in this state."
There is no want of due process in this. The defendant is given notice of the specific charges brought against him and ample time *Page 785 
in which to answer them. He is ordered to come into the court, which has original jurisdiction of the case under the Constitution and to answer the charges. He is given ample opportunity to make his defense. If he should fail to appear after service and citation within the delays allowed, he is in default and the complainant, the committee, "shall be at liberty to proceed ex parte." This proceeding is in exact accord with that carried on in all civil proceedings in the courts of this state and is not violative of the due process clause in the Constitution of the United States (Amendment 14).
Section 4 of the rule provides that:
"When issue is joined, the court may hear the evidence, or the court may appoint a commissioner to take the evidence in chambers. * * * The commissioner shall regulate all the proceedings in every hearing before him, * * * shall have full authority to examine the parties in the cause under oath, touching all matters contained in the reference * * * to examine on oath, viva voce, all witnesses produced by the parties before him * * * and direct all other inquiries and proceedings in matters before him which he may deem necessary and proper to the justice and merits thereof, and the rights of the parties."
Section 5 of the rule provides for the taking of testimony debene esse, according to the forms prescribed by law for the taking of such testimony in civil cases in the district courts of this state; "or if the witness resides out of the state or is absent from the state, his or her testimony may be taken by deposition in answer to written interrogatories and cross-interrogatories, under a commission *Page 786 by the court or by the commissioner if one has been appointed." (Italics ours.)
These sections of the general rule merely provide the method of taking the testimony of witnesses in support of the charges and in support of the defense filed by the defendant "after issue joined." The purpose is to relieve this court of the burden of sitting through a long, protracted trial of such cases, and to save time.
There is no constitutional inhibition to this method of procuring evidence. On the contrary, it is sanctioned and authorized by the Constitution itself, which in terms provides that this court shall have "power to suspend or disbar under such rules as may be adopted by the court." Section 10, art. 7, Constitution of 1921.
These rules were adopted pursuant to the above provision of the Constitution, which is an express delegation of authority to this court to make them. No reason has been suggested, and we can think of none, why, under the above constitutional provision, this court should not adopt this method of taking testimony and thereby getting the facts before it. We have no doubt that the framers of the Constitution intended that the court might, if it saw fit, adopt this or any other method of taking testimony in such proceedings. These are rules of procedure and the grant of power to make them is specific and absolute.
In order, however, to safeguard the rights of the defendant, section 6 of the general rule provides that the accused party shall have twenty days from the date on which the commissioner files his report to file exceptions thereto, and — *Page 787 
"If exceptions are filed, they shall stand for hearing before the court on the summary docket, and on the record prepared by and before the commissioner. For sufficient cause shown, thecourt may permit evidence taken before the commissioner to besupplemented by hearing in open court." (Italics ours.)
The court has, on at least one recent occasion, heard original testimony in open court upon the application of the accused party. In re Heard, 174 La. 563, 141 So. 60.
Section 6 of the rule provides that:
"Upon the termination of the hearing, the commissioner shall report to the Court his findings of fact and conclusions of law. The parties shall have twenty days from the time of the filing of the report to file exceptions thereto, and if no exceptions are, within that period, filed by either party, the report shall stand confirmed."
Counsel for defendant construes this to mean that this court has delegated to the commissioner jurisdiction and authority to suspend or disbar an attorney at law, which is violative of section 10, art. 7 of the Constitution, which provides that the court itself shall have "exclusive original jurisdiction" in such matters.
Counsel has misinterpreted the rules. The authority and power to suspend or disbar is unquestionably a judicial function which cannot be delegated to a commissioner or to any one else. But the court, as the rules clearly show, has not delegated that authority to the commissioner, but reserved it to itself. The commissioner is authorized to take the testimony and report his findings to the court with his conclusions of law. But this is only a report and recommendation, which was not *Page 788 
intended to be and is not binding upon the defendant, who may except to the same when filed and urge his exceptions or objections when the case comes on for trial before the court. The trial of the case, under the rules, is before the court and by the court on the testimony taken by the commissioner. The entire record including the testimony taken and the report of the commissioner, is filed in court and the case is submitted on the record, after argument and briefs filed by counsel, according to the method followed in civil cases. The court may or may not approve the recommendations of the commissioner. These rules clearly show that the court reserved to itself the right to sit in judgment and this it does in all cases. A reading of the opinion in the recent cases of In re Heard, supra, and In re Fourchy, 175 La. 628, 143 So. 714, will show how thoroughly the court reviews the entire record, including the testimony. Counsel points out that in section 6 of this rule it is provided that "if no exceptions are, within that period (of twenty days), filed by either party, the report shall stand confirmed," and argues that in such case the commissioner's recommendation that defendant be disbarred would stand as a final judgment of the court of disbarment.
This does not mean that the defendant would be disbarred without further proceedings. It means that if after the taking of the testimony by the commissioner, he should recommend either that the testimony was not sufficient to support the charges or that it was, and recommended disbarment, the court would view the failure to except or object as a confession by the party cast that the findings and recommendations are correct and would then pronounce its own judgment in accordance *Page 789 
with the findings and recommendation.
There is nothing in this general rule to indicate that the court intended to delegate to the commissioner the right and authority to pronounce final judgment on the guilt or innocence of an accused. On the contrary, the rules clearly show that the court reserved the exercise of that right to itself.
We hold therefore that these rules are constitutional and valid.
 On the Plea of Prescription.
Counsel for defendant has argued and briefed the case as though it were a criminal prosecution. It is not such in fact. The contention on this point may be disposed of by quoting the language of this court in the case of State v. Fourchy,106 La. 743, 756, 31 So. 325, 331, to wit:
"This proceeding is entirely independent of any criminal prosecution, and might have been instituted and may be maintained although all such prosecutions on account of the matters set forth in the petition had been previously prescribed. As was said in the case of State ex rel. Adams v. Judge, supra [49 La. Ann. 1015, 22 So. 195], the legislature, in authorizing proceedings of this nature `proposed to supply another method, by civil proceedings,' of disbarring attorneys. And to the method, by civil proceedings, thus supplied, the rule of prescription which relates to civil, rather than that which relates to criminal, actions, is to be applied."
 On the Merits.
The duty imposed on this court of sitting in judgment in cases involving the moral *Page 790 
fitness of one who has been admitted to practice law, to further continue that practice, is a most unpleasant one and one which we undertake always with full realization of the blighting and disastrous consequences to the one accused which necessarily follow a judgment of conviction. For that reason we devote the utmost care always to a consideration of them. We enter upon a consideration of all such cases with the hope that it will be found possible, in a manner consistent with our duties, to purge the accused of all guilt. But in this case, the testimony against the defendant is overwhelming. The record shows beyond question that the signature of Drauzin Ducre to the document purporting to be his last will and testament in nuncupative form by private act is a forgery. That being true, it follows necessarily that Mr. Kenner, of all people, knows it. He prepared the will, signed it as a witness, and was present when the other four witnesses signed it and was present when Drauzin Ducre's name was appended to it. He therefore knows whether Drauzin Ducre, the testator, signed it.
Defendant testified on more than one occasion before the district court, and swore before the commissioner, that he did know; that he saw the testator sign it and that his signature thereto is the true and genuine signature of Drauzin Ducre.
In view of the testimony of the witnesses and the exhibits before us, we are compelled to hold that the signature appended to the document is not that of Drauzin Ducre. At the time the will purports to have been signed, Drauzin Ducre was an old man, possibly eighty years old and in poor health. Judge Prentiss B. Carter, who lives in that vicinity *Page 791 
and who knew Mr. Ducre well, was asked what was his general condition and appearance, and said, on page 32 of the record:
"Well, he was feeble, nervous, shaky old fellow. You couldn't call him a paralytic, but he was shaky. I don't know whether it was the effect of palsy or what it was, but the old man was shaky and trembling."
Judge Carter was then asked:
"What limbs would give you that impression that he was shaky?"
A. "His hands and arms and he walked with a feeble step."
Dr. Paine, a physician who had known Mr. Ducre for thirty years and who had often treated him, said of his condition:
"Well, it was a form of palsy, shaking palsy."
Asked if that condition prevailed in any particular part of the body, Dr. Paine said:
"Both arms and legs. He couldn't walk, he didn't have very good control over his hands and arms."
Dr. Bulloch, another physician, testified that Mr. Ducre was a very old man and quite feeble and that he was palsied; that his hands were shaky and that there was a tremor in his face.
As against this, the defendant produced witnesses who swore that Mr. Ducre could shave himself with an old-fashioned straight razor, that he could row a skiff, that he could walk half a mile, and that some time prior to his death he went hunting. But these witnesses did not dispute the testimony of Judge Carter and the two physicians that he was palsied and shaky in his hands. *Page 792 
This testimony is pertinent because the original of the purported will which is before us shows that the one who wrote the name "Drauzin Ducre" thereon did not write with a shaky, palsied hand. All the strokes of all the letters in the name are clean-cut and precise; the letters are well formed and are properly spaced. The most casual observation shows that the name was written with a steady and not a palsied hand.
There are in the record five specimens of the signature of Drauzin Ducre which are admittedly genuine. One is his signature on a promissory note, another is his signature to his marriage license, and still another to a notarial document. These original documents are before us. The glaring difference between these signatures and the one attached to the will leaps instantly to the eye. It takes no expert to distinguish the difference. Any layman could tell that the one who signed the note, the marriage license, and the notarial document did not sign the will.
The name of the testator was "Drauzin Ducre." But in writing his name, he always wrote it "Duce," leaving out the "r." But the name on the will is written out plainly "Ducre."
In writing the name "Drauzin," the testator never joined the letter "z" to the letter "u", but always left a space between them. These are characteristics found in all his genuine signatures. In the name appended to the purported will, all the letters are joined.
The letters in all these genuine signatures are poorly formed and the signatures attached to the note and the notarial document, both dated in 1926, show that they were written with a palsied, shaky hand. *Page 793 
Dr. Louis Schulhofer, a noted handwriting expert, after comparing the genuine signatures with that attached to the will, testified:
"A general appearing of the two standards in comparison with the will are so entirely foreign to each other that a mere glance at this photostat will convince any observer of all the divergencies as they appear in these three signatures. There isn't a letter in these admitted signatures `S. 1 or S. 2' that is alike to the signature as it appears on the will.
"The writing in S. 1 and S. 2 representing the admitted signature of Drauzin Ducre, is the writing of an illiterate, feeble old man with a trembling hand. It is illegible, incoherent, entirely out of proportion. The person writing these two signatures could never have written the signature appearing on the will marked W-3/13-28."
There were five witnesses to the will, the defendant and his wife, John and Adam Chabrick, and Adelaide Lafrer. The latter, it seems, was the concubine of Nick Ducre, a son of the testator, and a beneficiary under the will. Nick and his concubine lived in the house with the testator. The defendant, his wife, and Adelaide Lafrer all testified that the testator signed the will. These were interested witnesses. The other two were not. They were brought to the place by Nick Ducre to act as witnesses. They testified that they signed as witnesses but did not see Drauzin Ducre sign.
Our conclusion is that the signature to this purported will was written by a person other than Drauzin Ducre and that defendant knew it, and we hold that his representation to the court on various occasions, as shown by his sworn testimony, that the signature *Page 794 
was genuine, were acts of moral turpitude constituting professional misconduct. They evidence moral unfitness to practice law and warrant his disbarment.
For the reasons assigned, the report of Stamps Farrar, the commissioner appointed herein, is approved, and it is now ordered that the defendant, Hiddleston Kenner, be disbarred, and that his license to practice law be revoked and his name stricken from the roll of attorneys of the state.
ST. PAUL, J., dissents.